IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK S. GRENELL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:21cv36 |
| | ) | **Electronic Filing** |
| **ZURICH AMERICAN INSURANCE CO..** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION**

Mark S. Grenell ("plaintiff") commenced this action in the Court of Common Pleas of Fayette County seeking declaratory relief entitling him to underinsured motorist benefits under a policy of insurance issued by Zurich American Insurance Company ("defendant"). Defendant removed the action. Presently before the court are cross motions for summary judgment. For the reasons set forth below, defendant's motion will be granted, and plaintiff's motion will be denied.

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). Rule 56 "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). Deciding a summary judgment motion requires the court to view the facts, draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(E)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" . . . "and cannot simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992); Sec. & Exch. Comm'n v. Bonastia, 614 F.2d 908, 914 (3d Cir. 1980) ("[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment."). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence is merely colorable or lacks

sufficient probative force summary judgment may be granted. Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiff establishes the backdrop that follows. This case arises from an August 14, 2019, motor vehicle accident in which plaintiff sustained various physical injuries. Plaintiff settled with the driver of the other vehicle ("tortfeasor") for the tortfeasor's $50,000 bodily injury liability limits and received underinsured motorist benefits ("UM/UIM benefits") of $500,000 from his own auto insurer, Agency Insurance Company.

At the time of the accident plaintiff was operating a vehicle provided to him by his employer, Hobart Corporation, a subsidiary of International Tool Works, Inc. ("ITW"). Plaintiff was permitted to use the vehicle for both business and personal use and at the time of the accident he was using the vehicle for his personal use. Plaintiff paid taxes on the benefit received from his personal use of the vehicle; the amount paid was based in part on the annual lease value of the vehicle.

At the time of the accident, the vehicle was insured by a Business Automobile Policy issued by defendant to ITW ("the Zurich policy"). In the process of purchasing the Zurich policy, ITW's casualty risk manager, Ms. Ostling, executed a form rejecting UM/UIM benefits. As a result, ITW did not pay premiums for UM/UIM benefits. In addition, plaintiff was never notified of ITW's rejection of these benefits.

On October 24, 2019, plaintiff notified defendant of his claim for UM/UIM benefits under the Zurich policy. On January 13, 2020, defendant denied coverage. Plaintiff's complaint for declaratory relief followed.

In support of its motion for summary judgment, defendant asserts that plaintiff is bound by the waiver of UM/IUM benefits executed by ITW. It posits that the waiver is valid because it complied with section 1731 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). The language of the MVFRL assertedly makes it clear that while such benefits must be offered, they may be rejected by the named insured. And in this regard only the named insured must be informed that UM/UIM benefits can be waived. In addition, the MVFRL permits the named insured to waive these benefits on behalf of "relatives of [his] household," 75 Pa. C. S. § 1731(c), and this extends to commercial insurance policies. For these reasons, defendant contends that ITW properly waived UM/UIM benefits on behalf of all of its employees, including plaintiff, and therefore it is entitled to summary judgment.

Plaintiff does not dispute that ITW executed a waiver. Nevertheless, he contends that the waiver does not apply to him because ITW cannot waive UM/UIM benefits on his behalf. This is so for several reasons. First, plaintiff was permitted to use the vehicle for both business and personal use and was using the vehicle for personal use at the time of the accident. Further, plaintiff paid taxes for his personal use of the vehicle. In addition, the language of MVFRL assertedly indicates the waiver applies only to personal auto insurance policies. Against this backdrop, plaintiff maintains that he should have been put on notice about the waiver. Because he was not informed or otherwise given an opportunity to protect his personal interests, he did not knowingly or voluntarily reject UM/UIM benefits. Consequently, from plaintiff's perspective the waiver is invalid.

4

The record demonstrates that Ms. Ostling validly executed a waiver on behalf of ITW and it complied with the MRFRL. Section 1731 applies to commercial insurance policies. Section 1731 allows UM/UIM benefits to be waived by the named insured on behalf of "myself and all relatives residing in my household. . . ." 75 Pa. C. S. § 1731(c). In considering this language in conjunction with the Pennsylvania Statutory Construction Act, 1 Pa. C. S. § 1902, the court in Travelers Indem. Co. v. DiBartolo reasoned that "words of masculine gender include feminine gender and neuter forms and thus 'he' may stand for a corporation." 171 F.3d 168, 170 (3d Cir. 1999). In addition, recognizing that corporations may exercise the full panoply of rights set forth in § 1731 is consistent with the congressionally recognized public policy of controlling escalating insurance costs and the ability of the individually named insured to waive coverage for others within the scope of the policy. Id. And it also advances the statutory directive that such coverage remain optional. Id. The DiBartolo court further reasoned that the "linguistic style of the rejection form, designed for easy comprehension does not evidence a legislative intent to prohibit corporations or other legal entities from executing a waiver." Id. Consequently, "Pennsylvania law allows a corporation to waive [UM/UIM] coverage for its employees under a company insurance policy." Id. at 169.

The waiver executed by Ms. Ostling is valid because it complies with § 1731 of the MVFRL. Section 1731 states in unambiguous terms that the "purchase of the uninsured motorist and underinsured motorist coverages is optional." 75 Pa.C. S. § 1731. Subsection c further provides that "the *named insured* shall be informed that he *may reject* underinsured motorist coverage." Id. (emphasis added). Further, the statute contains a recitation of the form of notice that the legislature deemed sufficient to effectuate such a rejection. See DiBartolo, 171 F.3d at

5

172 (echoing the district court's sentiment that utilizing the "statutorily required language" sufficiently validates a company's waiver of UM/UIM benefits).

Here, the waiver signed by Ms. Ostling is valid and binding on plaintiff. There is no dispute that Ms. Osting was the Casualty Risk Manager for ITW and that she executed a waiver for its benefit. The executed form mirrored the statutory language required for an effective waiver. And because ITW validly executed the waiver as the named insured, plaintiff is bound by that waiver. Cf. DiBartolo, 171 F.3d at 171 n.8 ("if we were to apply the principle beyond named insureds to all covered persons, it would contradict the statute's clear provision that a policyholder has the power to waive for his or her entire household").

Against this backdrop, plaintiff's contention that the equities of the situation warrant a different outcome is unavailing. There is no question that the car was supplied by ITW for plaintiff's use in the performance of his duties as an employee. Thus, this is not a situation where an employer has supplied a company vehicle solely for an employee's personal benefit and private use.

Nor is there a dispute about whether ITW was the named insured. It is undisputed that it was, and plaintiff has not shown any basis to question that designation. Thus, this is not a scenario that presents a mistake or a forceful dispute about the purpose for which the policy was acquired.

Moreover, plaintiff's ability to protect his personal interest in any vehicle driven for personal use adequately was protected through the coverage limits elected in conjunction with his private insurance company. ITW's waiver of UM/UIM coverage under the Zurich policy had no impact on plaintiff's election as to the coverage inuring to his private use of any automobile. It only had an impact on whether ITW would exercise its statutory option to provide an

additional layer of coverage to plaintiff and other similarly situated employees under such circumstances.  ITW exercised its statutory option in a manner that foreclosed providing that benefit to plaintiff, which it was entitled to do.  In other words, it elected to forego the costs of bestowing that benefit on its employees and its decision to do so advanced one of the competing tenets of § 1731: to control insurance costs.

It follows that the record lacks an equitable basis to circumvent the straightforward application of § 1731 as recognized in DiBartolo.  Consequently, summary judgment will be granted in favor of the defendant.

Date: September 22, 2022

                                                    s/David Stewart Cercone
                                                    David Stewart Cercone
                                                    Senior United States District Judge

cc:    Shane M. Gannon, Esquire
        Joseph V. Lesinski, Esquire